FILED
CLERK, U.S. DISTRICT COURT

MAR − 7 2014

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

John R. Armstrong. Calif. Bar No. 183912
E-mail: jarmstrong@horwitzarmstrong.com
Christopher L. Tinen, Calif. Bar No. 279553
E-mail: ctinen@horwitzarmstrong.com
**HORWITZ + ARMSTRONG** LLP
26475 Rancho Parkway South
Lake Forest, CA 92630
(949) 540-6540 (TEL.)
(949) 540-6583 (FAX)
Attorneys for Plaintiff, Vape Holdings, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

*VAPE HOLDINGS, INC.*, a Delaware
corporation,

        Plaintiff,

        versus

*STONE ARCH STUDIO LLC, a
Minnesota limited liability company;
WAEL "WALLY" SAKALLAH, an
individual,*

        Defendants.

Case No.: **CV14-1682 FMO-JCx**

**COMPLAINT FOR:**

1) **Breach of Contract;**
2) **Promissory Estoppel; and,**
3) **Slander of Title**

[Complaint seeks money damages,
punitive damages, injunctive and
declaratory relief]

**JURY TRIAL DEMANDED**

    Plaintiff, VAPE HOLDINGS, INC. complains and alleges as
follows against defendants Stone Arch Studio, LLC and Wael "Wally"
Sakallah:

## JURISDICTION AND VENUE

    1.    The Court has subject matter jurisdiction by diversity
jurisdiction under Title 28 U.S.C. § 1332 in that this is a civil action
between citizens of different states and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

2.    Venue is proper in this district under Title 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claim occurred in this judicial district.

## PARTIES

3.    Plaintiff VAPE HOLDINGS, INC. is a Delaware corporation ("Vape") with its principal place of business in Woodland Hills, Los Angeles, County, California, which is located in the United States Central District of California.

4.    Vape is informed and believes, and so alleges that defendant STONE ARCH STUDIO LLC ("Stone Arch") is a Minnesota limited liability company with its principal place of business at 314 Buchanan St. NE, Minneapolis, Minnesota.

5.    Vape is informed and believes and based thereon alleges defendant WAEL SAKALLAH ("Sakallah"), otherwise known as "Wally Sakallah," is and was at all relevant times a resident of Minnesota and is the sole member and managing member of Defendant Stone Arch.

6.    Stone Arch and Sakallah are collectively referred to as "defendants."

7.    Plaintiff is informed and believes, and so alleges that at all times mentioned, defendants and each of them were the agents, servants, co-conspirators, partners, representatives or employees of each of the other defendants and were acting at all times either individually or within the course and scope of such capacity and authority, and with the advance knowledge, consent, permissions, acquiescence, and express or implied ratification of the remaining

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

defendants such that the actions of any defendant can be attributed to all other defendants, and that defendants each and of them knowingly aided and abetted each other to commit the wrongs alleged in this Complaint.

8.     Vape is informed and believes, and so alleges that defendants, and each of them, were the alter egos of each of the other defendants. Plaintiff is further informed and believes, and so alleges that there exists and has existed, a unity of interest and ownership between them such that any individuality and separateness between these defendants has ceased, that defendants intermingled the assets of each to suit their convenience, and used business formalities for improper purposes. Plaintiff is informed and believes, and so alleges that adherence to the business fiction of defendants' separate existence as distinct individuals or entities would promote injustice or fraud.

GENERAL ALLEGATIONS

9.     Plaintiff Vape is forced to bring this lawsuit because Stone Arch, and its principal, Sakallah, suffer from "seller's remorse." This remorse comes after Sakallah later learned that Vape is a publicly traded company, and an up and coming leader in the legal cannabis industry, which plans to produce high-intensity, vaporization element systems ("H.I.V.E."), a ceramic vaporization piece. That is, Stone Arch and Sakallah seek to extort more money from Vape than the previously agreed on sales price based on their post-sale inquiries regarding Vape's financial position.

10.    Seller's remorse, however, is not a valid defense to a breach of contract claim where, as here, the buyer has unilaterally accepted

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

the seller's offer and tendered payment—especially when Vape has reasonably relied on and made significant business decisions on the seller's representation that the Hive trademark and tradename was sold to Vape.

### Events Giving Rise to Offer and Acceptance Regarding the Sale of the Hive Trademark and Tradename to Vape

11. On December 14, 2013, Vape sent Stone Arch's principal, Sakallah, a preliminary term sheet of $10,000 convertible note for the HIVE TM (the "Trademark") pending due diligence. A true and correct copy of the term sheet is attached as Exhibit "A."

12. In response, Sakallah rejected Vape's terms sheet and refused to sign on behalf of Stone Arch, but indicated that he would sell Stone Arch's trademark and tradename for more money.

13. Thereafter, the parties, Vape and Stone Arch, through their agents and representatives engaged in sales discussions for the purpose of Vape purchasing Stone Arch's HIVE trademark and tradename.

14. After rejecting Vape's initial offer, Sakallah made a counter-offer to Vape that he would sell Stone Arch's trademark and tradename to VAPE for $50,000, which counter-offer was made in an email he sent to Vape's agent on December 26, 2013, a true and correct copy of which is attached as Exhibit "B."

15. In response, that same day, December 26, 2013, Vape counter-offered for either $25,000 convertible note or $30,000 cash in response to Stone Arch's $50,000 demand. A true and correct copy of Vape's counter-offer is attached as Exhibit "C."

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

16.　In response, Stone Arch re-asserted its $50,000 offer to sell its Hive trademark and tradename. A true and correct copy of Stone Arch's $50,000 counter-offer dated December 28, 2013 is attached as Exhibit "D."

17.　In response, Vape, requested, without rejecting Stone Arch's $50,000 counter-offer whether Stone Arch would be willing take $30,000 cash plus $10,000 note or $40,000 cash in lieu of a lump sum payment of $50,000. A true and correct copy of Vape's request is attached as Exhibit "E."

18.　In response to Vape's request, Stone Arch's principal stated that he would only sell Stone Arch's Hive trademark and tradename in exchange for payment of $50,000 on January 2, 2014. A true and correct copy of Stone Arch's offer to sell its Hive trademark and tradename for $50,000 is attached as Exhibit "F."

19.　In response, on January 2, 2014, Vape accepted Stone Arch's offer to sell its Hive trademark and tradename to Vape for $50,000, and documented Vape's acceptance of Stone Arch's offer in an email to its principal, Sakallah. A true and correct copy of this email is attached as Exhibit "G."

20.　Because the U.S. Patent and Trademark Office requires a written assignment, in Vape's acceptance e-mail, it indicated that it would provide Stone Arch the final documents to memorialize the formal assignment.

21.　After this conversation, the parties understood that Vape had acquired the Hive trademark and tradename that Stone Arch had previously registered with the U.S.P.T.O., and based on this, began making significant business decisions based on launching a product

1  using the Hive trademark and tradename.

2      22.   Later that same January, Vape's president met Sakallah

3  at a tradeshow, where Sakallah acknowledged that he was taking

4  steps to remove the Hive trademark and tradename from Stone Arch's

5  products, and asked how soon Vape would be tendering payment for

6  the sale.

7      23.   After the tradeshow, Vape sent Stone Arch the required

8  documentation to facilitate the assignment of Stone Arch's Hive

9  trademark and tradename to Vape on January 21, 2014. A true and

10  correct copy of this communication and enclosed documentation is

11  attached as Exhibit "H."

12      24.   In response, Sakallah indicated that he refused to sign the

13  assignment contract documents until Stone Arch received the $50,000

14  sales payment.

15      25.   Based on this demand, Vape tendered Stone Arch a check

16  for the full $50,000.  This check was returned by counsel for

17  defendants to Vape shortly thereafter.  A true and correct copy of this

18  payment and defendants' rejection correspondence is attached Exhibit

19  "I."

20      26.   Despite Vape's tender of payment, Stone Arch and

21  Sakallah have failed and refused to execute the necessary

22  documentation to facilitate the assignment of Stone Arch's trademark

23  and tradename to Vape.

24      27.   Because defendants refuse to honor their promise, and

25  have wrongly tried to renege on their accepted offer, and because Vape

26  reasonably began investing in a new product and marketing line

27  based on the Hive trademark and tradename, Vape has been forced to

28

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

bring this action.

28.    Worse, defendants Stone Arch and Sakallah have been defaming Vape in the marketplace and falsely claiming that they are the rightful owner of the Hive trademark and tradename.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

29.    Plaintiff adopts paragraphs 1-28 here by reference.

30.    Vape entered into a contract with Stone Arch to buy Stone Arch's Hive trademark and tradename for $50,000.

31.    Vape performed all of its obligations under the parties' agreement by tendering $50,000 to Stone Arch as well as all the necessary paperwork needed by the U.S.P.T.O. to formally document the assignment and sale contract.

32.    Stone Arch however has failed and refused to execute the necessary documents to complete the formal assignment of its Hive trademark and tradename to Vape.

33.    Further, Stone Arch and Sakallah have falsely represented to Vape and to others that there is no agreement and that Stone Arch has reneged on its offer to sell its Hive trademark and tradename to Vape unless Stone Arch is paid much greater consideration than its previous $50,000 demand.

34.    Accordingly, Vape has performed all its obligations to complete the contract, but Stone Arch has breached the contract by refusing to honor its promises and commitments to Vape, choosing instead to go back on its word.

35.    As a direct and proximate result of defendants' contract breaches stated above, plaintiff has directly and proximately

sustained economic losses, including, but not limited, consequential damages, incidental, and nominal damages in an amount to be proved at trial, but which are believed to exceed $1,000,000, and defendants and each of them where or should have been aware that such damages would flow from their contract breaches should defendants fail and refuse to assign the Hive trademark and tradename to Vape.

36.   Additionally, because the personalty at issue is unique, money damages would not be adequate remedy, and so Vape seeks specific performance of the assignment contract, as well as all consequential and incidental damages that have risen from defendant Stone Arch's breach of its sales agreement, in an amount to be proved at time of trial.

## SECOND CLAIM FOR RELIEF

### (Promissory Estoppel)

37.   Vape adopts by reference paragraphs 1-36 here.

38.   Stone Arch and Sakallah knew or should have known that Vape would reasonably rely to its detriment on Stone Arch's and Sakallah's representations that Stone Arch would sell its Hive trademark and tradename to Vape for $50,000.

39.   Vape reasonably and actually relied on these representations, and based on these representations, began investing in a products and a marketing line using the Hive trademark and tradename, investing over substantial sums in the new H.I.V.E. product line.

40.   As a result of defendants Stone Arch and Sakallah's representation,  Vape seeks damages in an amount to be proven at time of trial, which is believed to be over $1,000,000 in total damages

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

at this time as consequence of Vape's reliance on Stone Arch's and Sakallah's promises.

41.    In that money damages would provide an inadequate remedy because the personal property at issue is unique, Vape also seeks specific performance in the nature of an injunction against defendants Stone Arch and Sakallah to assign the Hive trademark and tradename to plaintiff, and to cease and desist their claiming ownership to or in the Hive trademark and tradename.

### THIRD CLAIM FOR RELIEF
### (Slander of Title)

42.    Vape adopts paragraphs 1-41 here.

43.    Defendant Stone Arch, by and through its principal, Sakallah made statements at tradeshows and to other persons and businesses in the legal cannabis industry, which included statements that Stone Arch was the sole and exclusive owner of the Hive trademark and tradename and that the Hive trademark and tradename had not been sold to Vape.

44.    Defendants made these false statements without privilege or justification because defendants made these statements *after* plaintiff had accepted defendants' offer to sell the Hive trademark and tradename to plaintiff for $50,000.

45.    Defendants intentionally made these false statements with knowledge that they were and are false, and made them for the purpose of causing injury to Vape, as these statements were reasonably calculated to cause direct and immediate pecuniary loss to Vape, including, but not limited, reputational harm to Vape and to Vape's interest in the Hive trademark and tradename that Stone Arch

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

had sold to Vape.

46.    Defendants and each of them made these false and slanderous statements with intent to harass, vex, and extort more money from Vape in excess of the agreed upon contract price. That is, defendants made these statements with malice and ill-will, and for the purpose of intentionally harming Vape and Vape's good name in violation of California Civil Code, § 3294, so as to warrant the issuance of punitive damages to punish and deter defendants and each of them in an amount to be proved at trial, above and beyond the compensatory damages being claimed in this action.

47.    As a direct and proximate result of defendant's slanderous statements stated above, Vape has been injured and seeks compensatory damages, which damages include, but are not limited to, recovery of its reasonable legal fees and expenses that defendants have caused plaintiff to incur so that plaintiff can establish clear title to the Hive trademark and tradename by removing defendants' cloud on plaintiff's title to this property, as well as all other damages reasonably necessary to remove doubt that Vape has a legally protectable property interest in the Hive trademark and tradename, as well as damages to correct the harm that defendants Stone Arch and Sakallah have caused by their disparaging statements.

48.    Vape further seeks recovery of any and all other financial losses it has or will sustain resulting from the impairment of its claim of ownership and cloud on its title to and in the Hive name and trademark. Vape also seeks general and special damages for the time and inconvenience Vape has suffered by being forced to take efforts to remove the doubt defendants have cast upon Vape's ownership in the

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Hive trademark and tradename.

49.   These damages may include, but are not limited to marketing, promotional, and other efforts to show the market and the world that Vape has an ownership interest in the Hive name and trademark.

50.   Plaintiff's damages will be proved at time of trial but are believed to exceed $1,000,000.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief)

51.   Vape adopts paragraphs 1-50 above here.

52.   An actual and present controversy exists between Vape and defendant Stone Arch regarding whether a contractual relationship exists between the parties, and specifically whether Vape has performed all its contractual obligations such that, in equity and in good conscience, the Court should declare that:

     a. A contract for the sale of the registered Hive trademark and tradename exists between Vape and Stone Arch;

     b. Vape has performed all of its contractual obligations;

     c. Stone Arch must, under the circumstances of the case, assign its registered Hive trademark and tradename to Vape forthwith such that Vape may register the formal assignment of the Hive trademark and tradename with the U.S.P.T.O. as the present owner of this tradename and its associated trademarks;

11

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

d. An injunction should issue prohibiting Stone Arch and Sakallah from claiming that Vape does not own the Hive trademark or tradename.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff Vape Holdings, Inc. demands judgment be entered for plaintiff and against defendants, and each of them, as follows:

1. For money damages in an amount to be determined at trial, but in excess of $1,000,000, including, but not limited to, attorney's fees and legal expenses as damages for those fees and expenses reasonably related to removing the cloud to plaintiff's title to the registered Hive trademark and tradename;

2. For an injunction enjoining defendants Stone Arch and Sakallah from using the Hive trademark or tradename or otherwise using or claiming that Vape does not own the Hive trademark and tradename;

3. For declaratory relief as set out above;

4. For specific performance of the contract of sale to complete the assignment of the Hive trademark and tradename to Vape;

5. For pre-judgment interest according to law;

6. For reasonable attorney's fees and reasonable legal and marketing expenses necessary to clear Vape's title to the Hive trademark and tradename in an amount to be proved at trial;

7. For costs of suit; and

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

8.    For such other and further relief as this court deems fair and equitable under the circumstances.

DATED:    March 7, 2014          HORWITZ + ARMSTRONG LLP

By: /S

John R. Armstrong,
Christopher L. Tinen,
Attorneys for Plaintiff,
Vape Holdings, Inc.

13

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

1

## DEMAND FOR JURY TRIAL

Plaintiff Vape Holdings, Inc. hereby demands trial by jury on all issues raised by its Complaint for which there is right to trial by jury on, under the 7th and 14th Amendments to the U.S. Constitution, under Article I, § 16 of the California Constitution, and under Federal Rules of Civil Procedure 38 and 39.

DATED:     March 7, 2014          **HORWITZ + ARMSTRONG** LLP

By: /S
          John R. Armstrong,
          Christopher L. Tinen,
          Attorneys for Plaintiff,
          Vape Holdings, Inc.

---

14

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

# EXHIBIT "A"

December 14, 2013

**<u>CONFIDENTIAL</u>**

Mr.  Wally Sakallah
Stone Arch Studio, LLC
314 Buchanan St. NE
Minneapolis, MN 55413
[sakallahw@yahoo.com](mailto:sakallahw@yahoo.com)

Dear Wally:

I am writing to set forth the basis upon which Stone Arch Studio, LLC ("Stone Arch Studio") and PeopleString Corporation (OTCQB:PLPE)  ("PeopleString") propose to enter into discussions regarding the potential acquisition of the Hive trademark by PeopleString (the "Proposed Transaction").  Stone Arch Studio and PeopleString shall sometimes be collectively referred to herein as the "Parties".

1. ***Preliminary Term Sheet***.  Attached as <u>Exhibit A</u> is a preliminary term sheet which sets forth the principal terms of the Proposed Transaction.  Stone Arch Studio and PeopleString shall conduct negotiations in good faith based on the attached preliminary term sheet (the "Term Sheet").  However, the terms contained in the Term Sheet have not been unequivocally agreed to by any Party, are based on certain assumptions concerning the completion of a due diligence review and are subject to reasonable change based upon the results of such review.

2. ***Due Diligence Review***.  The Parties willingness to proceed with the negotiation of the Proposed Transaction is subject to the satisfactory completion of a review by the Parties and their advisors of the business, financial, technical and legal affairs associated with the Proposed Transaction during the five days following the date of this Term Sheet (the "Due Diligence").

3. ***Definitive Agreement***.  Subject to satisfactory progress being made in the Due Diligence, the Parties shall concurrently proceed to negotiate in good faith definitive documentation  (the "Definitive Agreements").  The obligations of the parties to consummate the transaction contemplated hereby shall be subject in all respects to the negotiation, execution and delivery of the Definitive  Agreements, and neither party shall have any liability to the other if the Parties fail for any reason to execute the Definitive Agreements.  Either party may terminate this Term Sheet and negotiations at any time prior to executing the Definitive Agreements, and if not earlier terminated, this Term Sheet will terminate automatically 10 days from the date of this Term Sheet, unless extended by mutual written consent of the Parties.  PeopleString will provide

Stone Arch with an initial draft of the Definitive Agreements within five days of the date of this correspondence and it is contemplated that the Proposed Transaction shall close no later than 10 days from the date of this correspondence, unless otherwise mutually agreed (the "Closing Date").

     4.     **Expenses**. The Parties shall pay their own expenses and fees incurred in connection with the Proposed Transaction, including all legal and accounting fees and expenses, whether or not the acquisition is consummated.

     5.     **Governing Law**. This letter will be governed by the internal laws of the State of California, excluding any conflicts of law principles.

Please indicate your intent to proceed with negotiations of the Definitive Agreements on the terms outlined in Exhibit A to this letter by executing in the space provided below and returning a copy to me. We look forward to the success of the discussions contemplated by this letter.

                           Sincerely,

                           Kyle Tracey


**AGREED AND ACCEPTED:**

Stone Arch Studio, LLC

By:     _____

         Wally Sakallah, President

## EXHIBIT"A"

### HIVE TRADEMARK ASSIGNMENT
### TERM SHEET

*This proposed term sheet constitutes an indication of interest for discussion purposes and preparation of definitive agreements only, and is not binding.*

| | |
|---|---|
| **Company** | Stone Arch Studio, LLC |
| **Amount** | $10,000.00 |
| **Purchase Price** | PeopleString Corporation will provide the Company with $10,000 in the form of a convertible debenture in exchange for the assignment of the Hive trademark and all rights associated therewith |
| **Terms** | The note will be convertible at 40% of the lowest closing bids for the 20 days preceding the conversion. The note will bear an interest rate of 6%. |
| **Confidentiality** | The existence of this term sheet and the individual terms and conditions are of a confidential nature and shall not be disclosed to anyone, except to the Seller, the Buyer and their respective legal advisors. |
| **Closing Date** | On or about December 24, 2013. |

# EXHIBIT "B"

On Dec 26, 2013, at 1:44 PM, "Wally" <sakallahw@yahoo.com> wrote:

Sorry I was out of town for the holidays. I did talk to my lawyer and the only thing I would be interested in doing is selling it for no less than $50,000.

Wally

Sent from my iPhone

On Dec 23, 2013, at 1:11 PM, Christopher Tinen <ctinen@hcalaw.biz> wrote:

Mr. Sakallah,

I have not been able to reach you and would like to discuss my client's offer for the HIVE trademark.  Can you provide the best contact phone number for you? Thank you.

Sincerely,

CHRISTOPHER L. TINEN, ESQ.
HORWITZ, CRON & ARMSTRONG, LLP  I 26475 RANCHO PARKWAY SOUTH, LAKE FOREST, CA 92630
PHONE: 949.540.6540 I FAX: 949.540.6578 I E-MAIL: ctinen@hcalaw.biz

1

# EXHIBIT "C"

**Christopher Tinen**

| | |
|---|---|
| **From:** | Christopher Tinen |
| **Sent:** | Thursday, December 26, 2013 9:50 PM |
| **To:** | Wally |
| **Subject:** | Re: Hive Trademark Assignment |

Wally,

I have discussed this with my client and would like to point out a few things.

First, as part of our offer, any unsold inventory you have would not be affected. So, for example, you would be free to sell the 1000 vaporizers you have remaining in stock and reap those profits as you normally have.

Second, the $10,000 offer we made was in the form of a convertible note. This gives you downside protection in the event PLPE stock does not increase. Conversely, in the event the stock price of PLPE grows, you would be able to benefit substantially. We view this offer as far more than a mere $10,000 cash offer.

Lastly, as Mr. Tracey discussed on our teleconference earlier this month, the connections to various parties in the industry he and the company have can be beneficial to your ongoing business. If you would like to include language to this effect we would be open to that idea.

That being said, my client has authorized me to offer a $25,000 note on the same terms as our previous offer or $30,000 cash.

We await your response and thank you for your consideration.


On Dec 26, 2013, at 1:44 PM, "Wally" <sakallahw@yahoo.com> wrote:

> Sorry I was out of town for the holidays. I did talk to my lawyer and the only thing I would be interested in doing is selling it for no less than $50,000.
>
> Wally
>
> Sent from my iPhone
>
> On Dec 23, 2013, at 1:11 PM, Christopher Tinen <ctinen@hcalaw.biz> wrote:
>
> > Mr. Sakallah,
> >
> > I have not been able to reach you and would like to discuss my client's offer for the HIVE trademark.  Can you provide the best contact phone number for you? Thank you.
> >
> > Sincerely,
> >
> > **CHRISTOPHER L. TINEN, ESQ.**
> > **HORWITZ, CRON & ARMSTRONG, LLP** ❘ 26475 RANCHO PARKWAY SOUTH, LAKE FOREST, CA 92630
> > PHONE: 949.540.6540 ❘ FAX: 949.540.6578 ❘ E-MAIL: ctinen@hcalaw.biz

# EXHIBIT "D"

**From:** Wael Sakallah <sakallahw@yahoo.com>
**Date:** December 28, 2013 at 8:22:40 AM PST
**To:** Christopher Tinen <ctinen@hcalaw.biz>
**Subject: Re: Hive Trademark Assignment**
**Reply-To:** Wael Sakallah <sakallahw@yahoo.com>

Thank you for your response, my offer stands at $50,000 or I am not interested. Thank you.

Wally


On Friday, December 27, 2013 6:33 PM, Christopher Tinen <ctinen@hcalaw.biz> wrote:
Wally,

We have yet to receive a response from you on the below offer.  My client has instructed me to advise you that if we do not receive a response to the below offer by **close of business on Monday, December 30, 2013** the offer is hereby revoked and we will not be pursuing this transaction any further.  As we have indicated to you previously the company is interested in the HIVE name but is fully prepared to move forward with a different name.  We do believe we are providing a fair offer and presenting you with a unique opportunity to be involved with this emerging growth company.

We await your reply.

Sincerely,

CHRISTOPHER L. TINEN, ESQ.
**HORWITZ, CRON & ARMSTRONG, llp** I 26475 Rancho Parkway South, Lake Forest, CA 92630
Phone: 949.540.6540 I FAX: 949.540.6578 I E-MAIL: ctinen@hcalaw.biz

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT "E"

**Christopher Tinen**

| | |
|---|---|
| **From:** | Christopher Tinen |
| **Sent:** | Monday, December 30, 2013 3:47 PM |
| **To:** | 'Wael Sakallah' |
| **Subject:** | RE: Hive Trademark Assignment |

Wally,

Thank you for your response. I understand your offer stands at $50,000 cash. That amount of cash is quite tough for a startup company such as my client.  The company has much more in equity to offer than it has in cash…hence our equity offers. If you haven't noticed, the company's stock is now trading at $0.19 up substantially from when we started these discussions.

Can you meet us halfway? I would propose either 1) $30,000 in cash with a $10,000 equity component or 2) $40,000 cash. I have yet to take this to my client and do not yet have authority to offer it. However, it is a number that I personally believe I can get my client to agree on. If you indicate you are willing to meet halfway I will get the authority from my client and we can wrap this up.  Your prompt response is appreciated.

Sincerely,

CHRISTOPHER L. TINEN, ESQ.
HORWITZ, CRON & ARMSTRONG, LLP | 26475 RANCHO PARKWAY SOUTH, LAKE FOREST, CA 92630
PHONE: 949.540.6540 | FAX: 949.540.6578 | E-MAIL: ctinen@hcalaw.biz

CIRCULAR 230 NOTICE: IN ACCORDANCE WITH TREASURY REGULATIONS WE NOTFY YOU THAT ANY TAX ADVICE GIVEN HEREIN (OR IN ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY ANY TAXPAYER, FOR THE PURPOSE OF (I) AVOIDING TAX PENALTIES OR (II) PROMOTING, MARKET NG OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN (OR IN ANY ATTACHMENTS).

ATTENTION: THIS MESSAGE IS SENT BY A LAW FIRM AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED OR CONFIDENTIAL.  IF YOU RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THE SENDER BY REPLY E-MA L AND DELETE THE MESSAGE AND ANY ATTACHMENTS.

**From:** Wael Sakallah [mailto:sakallahw@yahoo.com]
**Sent:** Saturday, December 28, 2013 8:23 AM
**To:** Christopher Tinen
**Subject:** Re: Hive Trademark Assignment

Thank you for your response, my offer stands at $50,000 or I am not interested. Thank you.

Wally

# EXHIBIT "F"

**Christopher Tinen**

| | |
|---|---|
| **From:** | W Sakallah <sakallahw@yahoo.com> |
| **Sent:** | Thursday, January 02, 2014 5:58 PM |
| **To:** | Christopher Tinen |
| **Subject:** | Re: Hive Trademark Assignment |

Hello Christopher,

As you know, I am not really interested in selling the trademark. That said, my offer of 50,000 stands firm.

Wally

Sent from my iPhone

On Jan 2, 2014, at 3:54 PM, Christopher Tinen <ctinen@hcalaw.biz> wrote:

Wally,

Can you please provide a response to my email below by close of business today on the west coast (i.e. 7PM Minnesota time)? We do need to know what your position is on this today otherwise we have to go in a different direction.  As always, thank you for your time on this.

Feel free to call me directly at (949) 540-6560 if you would like to discuss in more detail.

Sincerely,

CHRISTOPHER L. TINEN, ESQ.
HORWITZ, CRON & ARMSTRONG, LLP ∣ 26475 RANCHO PARKWAY SOUTH, LAKE FOREST, CA 92630
PHONE: 949.540.6540 ∣ FAX: 949.540.6578 ∣ E-MAIL: ctinen@hcalaw.biz

CIRCULAR 230 NOTICE: IN ACCORDANCE WITH TREASURY REGULATIONS WE NOT FY YOU THAT ANY TAX ADVICE GIVEN HEREIN (OR IN ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY ANY TAXPAYER, FOR THE PURPOSE OF (I) AVOIDING TAX PENALTIES OR (II) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN (OR IN ANY ATTACHMENTS).

ATTENTION: THIS MESSAGE IS SENT BY A LAW FIRM AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED OR CONFIDENTIAL.  IF YOU RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THE SENDER BY REPLY E-MAIL AND DELETE THE MESSAGE AND ANY ATTACHMENTS.

# EXHIBIT "G"

## Christopher Tinen

**From:**          Christopher Tinen
**Sent:**          Thursday, January 02, 2014 7:28 PM
**To:**            W Sakallah
**Subject:**       Re: Hive Trademark Assignment


Wally,

After conferring with my client, I have been authorized to accept your offer for the sale and assignment of the Hive trademark to my client in exchange for $50,000. Our office will work up the definitive documentation on this and get the documentation to you as soon as practicable. I thank you again for your time on this.

# EXHIBIT "H"

## Christopher Tinen

| | |
|---|---|
| **From:** | Christopher Tinen |
| **Sent:** | Tuesday, January 21, 2014 10:55 PM |
| **To:** | sakallahw@yahoo.com |
| **Subject:** | HIVE Trademark Assignment |
| **Attachments:** | 1-21-14 HIVE Trademark Assignment Agreement.pdf; 1-21-14 Trademark Assignment Agreement.docx |

Mr. Sakallah,

Please see the attached Assignment Agreement for the HIVE trademark.  There is a .pdf clean copy and a word doc copy for any redline changes.

If the agreement is acceptable, please sign and return a copy to me via email.  Your signature to the agreement must also be notarized with an acknowledgment form.  In addition, the original certificate of registration should be mailed by certified mail to my attention at the address below upon execution of the Agreement.

Please do not hesitate to contact me directly with any questions or concerns on this agreement. Thank you.

Sincerely,

CHRISTOPHER L. TINEN, ESQ.
HORWITZ, CRON & ARMSTRONG, LLP I 26475 RANCHO PARKWAY SOUTH, LAKE FOREST, CA 92630
PHONE: 949.540.6540 I FAX: 949.540.6578 I E-MAIL: ctinen@hcalaw.biz

CIRCULAR 230 NOTICE: IN ACCORDANCE WITH TREASURY REGULATIONS WE NOT FY YOU THAT ANY TAX ADVICE GIVEN HEREIN (OR IN ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY ANY TAXPAYER, FOR THE PURPOSE OF (I) AVOIDING TAX PENALTIES OR (II) PROMOTING, MARKET NG OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN (OR IN ANY ATTACHMENTS).

ATTENTION: THIS MESSAGE IS SENT BY A LAW FIRM AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED OR CONFIDENTIAL.  IF YOU RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THE SENDER BY REPLY E-MA L AND DELETE THE MESSAGE AND ANY ATTACHMENTS.

# TRADEMARK ASSIGNMENT AGREEMENT

**THIS TRADEMARK ASSIGNMENT AGREEMENT** (the "Assignment Agreement") is made and entered as of this ____ day of January 2014 (the "Effective Date") by and between **STONE ARCH STUDIO LLC** ("Assignor") and **VAPE HOLDINGS, INC.**, a Delaware corporation ("Assignee") (collectively, "Parties").

**WHEREAS**, Assignor owns the rights and priority in and to the "HIVE" trademark U.S. Registration No. 44513069 as registered with the U.S. Patent and Trade Office (the "Trademark") in International Class 034: Smoking pipes; Tobacco water pipes and the goodwill of the business symbolized thereby;

**WHEREAS**, Assignor wishes to assign and Assignee desires to acquire Assignor's entire right, title, priority and interest to the Trademark, together with the goodwill of the business that the Trademark symbolizes;

**NOW THEREFORE**, for good and valuable consideration exchanged, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    **ASSIGNMENT**.  Assignor does hereby irrevocably assign to Assignee, its successors and assigns, Assignor's entire ownership rights, title, interest and priority in and to the Trademark and all common law rights therein, together with the goodwill of the business in connection with which such Trademark are used; all rights to all state or federal registrations and applications which may have been or may be filed or issued with respect to the Trademark and any renewals thereof; all licenses, income, royalties, damages, and payments, now or hereafter due or payable with respect to the Trademark; all causes of action, either in law or equity, and the right to sue, counterclaim and recover for past, present and future infringement, misappropriation, or dilution of the Trademark against any third party and all rights corresponding thereto throughout the world (the "Assignment").

2.    **CONSIDERATION**.  In consideration for the Assignment, Assignee shall pay $50,000 to Assignor within fifteen (15) days of the Effective Date.

3.    **REPRESENTATIONS AND WARRANTIES**.  Assignor represents, warrants and covenants to Assignee:

     a.    Assignor has the right, power and authority to enter into this Assignment Agreement;

     b.    Assignor is the exclusive owner of all right, title and interest, including intellectual property rights, in the Trademark;

     c.    The Trademark is free and clear of any liens, security interests, encumbrances or licenses;

     d.    The Trademark does not infringe the rights of any person or entity;

e.      There are no claims, pending or threatened, with respect to Assignor's rights in the Trademark;

f.      This Assignment Agreement is valid, binding and enforceable in accordance with its terms in all jurisdictions pertaining hereto; and

g.      Assignor is not subject to any agreement, judgment or order inconsistent with the terms of this Assignment Agreement.

4.      **ENTIRE AGREEMENT**.  This Assignment Agreement contains the entire understanding of the parties hereto with respect to its subject matter and supersedes any prior or contemporaneous written or oral agreements, representations or warranties between the parties.

5.      **AMENDMENT**.  This Assignment Agreement may only be amended by a written agreement signed by both parties which explicitly adjoins itself to this Assignment Agreement.

6.      **SEVERABILITY**.   If any term, provision, covenant or condition of this Assignment Agreement, or the application thereof to any person, place or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable or void, such provision shall be severed from this Assignment Agreement, and the remainder of this Assignment Agreement and such term, provision, covenant or condition as applied to other persons, places and circumstances shall remain in full force and effect.

7.      **NOTICE**.  Any notice required or otherwise given pursuant to this Assignment Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service to:

        a.  If to ASSIGNEE:      Kyle Tracey
                                        Vape Holdings, Inc.
                                        20301 Ventura Boulevard, Suite 126B
                                        Woodland Hills, California 91364

        b.  If to ASSIGNOR:      Wael Sakallah
                                          Stone Arch Studio LLC
                                          314 Buchanan St. NE
                                          Minneapolis, MN 55413

8.      **FURTHER ASSURANCES**.  Assignor shall timely execute and deliver any additional documents and perform such additional acts necessary or desirable to record, perfect

and maintain the interest of Assignee in and to the Trademark, and shall not enter into any agreement in conflict with this Assignment Agreement.  Assignor shall not engage or enter into any transaction that may harm, threaten or jeopardize the goodwill and ownership interests in the Trademark held by Assignor henceforth.  Assignor covenants with Assignee, its successors and assigns, that no assignment, grant, mortgage, license, or other agreement affecting the rights and property herein conveyed has been made to others by Assignor and that the full right to convey the same as herein expressed is possessed by Assignor.   Assignor hereby requests the Commissioner of Patents and Trademarks of the United States of America, whose duty it is to issue trademark registrations, to issue the Certificate of Registration or Renewal or to record assignments, for any registration of the Trademark to Assignee, its successors, and assigns, in accordance with the terms of this Assignment Agreement.

9.      **CAPTIONS**.   Captions to the section in this Assignment are included for convenience only and do not modify and of the terms of this Assignment Agreement.

10.     **GOVERNING LAW**.   This Assignment Agreement shall be construed in accordance with the laws of the State of California, without regards to principles of conflicts of laws.

**IN WITNESS WHEREOF,** the Parties have caused this Assignment Agreement to be executed the day and year first above written.

**ASSIGNOR**                                              **ASSIGNEE**


_____                    _____
Stone Arch Studio, LLC                           Vape Holdings, Inc.
By: Wael Sakallah                                    By: Kyle Tracey
Title:                                                      Title: CEO

# EXHIBIT "I"

LUTZ LAW FIRM
860 RAND TOWER
527 MARQUETTE AVENUE S.
MINNEAPOLIS, MINNESOTA 55402
DAVID A. LUTZ, ESQ.
612-424-2110 (TEL)
612-343-4818 (FAX)
david@lutzlawfirm.com
www.lutzlawfirm.com

February 4, 2014

Vape Holdings
20301 Ventura Boulevard, Suite 126
Woodland Hills, CA 91364

Re:     HIVE

Dear Vape Holdings,

I am the attorney who represents Stone Arch Studio, LLC and Wael Sakallah.  I am in receipt of a letter dated January 27, 2014 whereby you submitted a check in the amount of $50,000 to my client.  I am returning this check to your attention as no agreement has been reached between you and my client.  I am still reviewing the particular facts surrounding the events that have recently taken place, but please be advised that at this point the use of my client's intellectual property has not been authorized and that no binding agreement has bee reached with respect to my client's intellectual property.

Sincerely,

David A. Lutz

cc:     Christopher L. Tinnen, Esq.
        Horwitz, Cron & Armstrong, LLP
        26475 Rancho Parkway South
        Lake Forest, CA 92630

16-24/1220 5571

Date 1/28/14

PAY to the
order of    Stone Arch Studio LLC.        $ 50,000.00

Fifty Thousand and 0/100——                    Dollars

WELLS
FARGO    Wells Fargo Bank, N.A.
         California
         wellsfargo.com

For    TRADEMARK

6659

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge        Fernando M. Olguin        and the assigned Magistrate Judge is         Jacqueline Chooljian         .

The case number on all documents filed with the Court should read as follows:

## 2:14-cv-01682 FMO-JCx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

March 7, 2014

Date

By  SBOURGEOIS

Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

## Subsequent documents must be filed at the following location:

[x] Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS  ( Check box if you are representing yourself ☐ ) | DEFENDANTS  ( Check box if you are representing yourself ☐ ) |
|---|---|
| Vape Holdings, Inc. | STONE ARCH STUDIO, LLC; WAEL "WALLY" SAKALLAH |

| (b) County of Residence of First Listed Plaintiff  Los Angeles | County of Residence of First Listed Defendant  Hennepin, MN |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| John Armstrong, Horwitz + Armstrong, LLP, 26475 Rancho Parkway South, Lake Forest, Orange County, CA 92630, (949) 540-6540 Tel., jarmstrong@horwitzarmstrong.com | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No      **MONEY DEMANDED IN COMPLAINT:** $ 1,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
BREACH OF CONTRACT; PROMISSORY ESTOPPEL; SLANDER OF TITLE TO TRADEMARK; DECLARATORY AND INJUNCTIVE RELIEF

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☒ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

CV14-1682

| FOR OFFICE USE ONLY: | Case Number: | | |
|---|---|---|---|
| CV-71 (11/13) | | CIVIL COVER SHEET | Page 1 of 3 |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| **Question A: Was this case removed from state court?** | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| **Question B: Is the United States, or one of its agencies or employees, a party to this action?** | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No | A PLAINTIFF?  Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?  Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| **Question C: Location of plaintiffs, defendants, and claims?** (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of the California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| **Question D: Initial Division?** | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Division |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES**: Have any cases been previously filed in **this court** that are related to the present case?    ☒ NO    ☐ YES

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** /s John Armstrong          DATE: March 7, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |